STATE of Tennessee, Plaintiff-Appellee,

v.

Arlie KNIGHT, Defendant-Appellant.

Supreme Court of Tennessee.

May 11, 1981.

Rehearing Denied June 8, 1981.

John W. Gill, Asst. Dist. Atty., Knoxville, Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville (William M. Leech, Jr., Atty. Gen., Nashville, of counsel), for plaintiff-appellee.

James A. H. Bell, Ritchie & Tipton, Knoxville, for defendant-appellant.

## OPINION

HARBISON, Chief Justice.

During defendant's trial before a jury upon an indictment for embezzlement, the trial judge, *sua sponte*, decided that the venue was improper and dismissed the indictment. Upon appeal by the State, the Court of Criminal Appeals held that the venue was proper and that the trial judge was in error in ordering a dismissal. It remanded the case for retrial. This Court granted the defendant's application for permission to appeal to consider his contention that another trial under these circumstances would violate the double jeopardy clauses of the constitutions of Tennessee and of the United States.

The appellant, Arlie Knight, delivered and sold ice cream products for a company having its offices in Knox County. His sales route was in adjacent Blount County. Upon completing a sale, appellant was required to write a receipt or sales ticket, leaving one copy with the customer and accounting for the sale by returning the original at the end of each day to his employer's offices in Knox County.

Appellant was indicted in Knox County for embezzlement. T.C.A. § 39–4232. A jury was impaneled and sworn, and the State offered its first witness, Mr. James Alexander, president of appellant's employer. This witness testified that appellant received the ice cream products each day in Knoxville before servicing his Blount County route. Appellant allegedly presented false sales tickets or receipts for two supermarkets located in Blount County. He delivered the originals of these tickets to the home office in Knoxville at the end of the day.

At the conclusion of the cross-examination of this witness, the trial judge asked the jury to retire. He stated that he would like to "hear from the attorneys" on the issue of venue, which had not previously been raised. The prosecutor argued that venue in Knox County was proper. Defense counsel did not meet this issue squarely; instead he urged that a judgment of acquittal should be entered because of an alleged fatal variance between the elements of the crime charged in the indictment and the evidence offered by the State. He did not expressly make a motion for dismissal on grounds of improper venue. However, in the course of his argument, defense counsel stated:

"Now he cannot show that any of these elements happened in Knox County, Tennessee. We say the State hasn't got a case in Blount or Knox County as a result of this indictment . . . ."

The trial court denied defense counsel's motion for acquittal on grounds of a variance. He stated, however, with respect to the venue question:

"I don't believe that the State has proved venue in Knox County but it has proved venue in Blount County. Because of that, without even a motion, the Court would have to say that we are in the wrong county trying this."

During further argument on the issue, counsel for the defendant renewed three times his motion for judgment of acquittal on the ground of a variance. Counsel stated, "Your Honor, we are insistent that the Court enter a judgment of acquittal." The Court replied:

"I am not going to enter a judgment of acquittal. I am going to dismiss the case on the fact that the state is in the wrong [county]."

Counsel for defendant stated:

"The defendant excepts to the Court's ruling, not as to the venue question, but as to the indictment."

Defense counsel did not at any time object to the dismissal of the indictment for improper venue.

Preserving prior statutory rules on the same subject, the Tennessee Rules of Criminal Procedure provide for concurrent venue in different counties if one or more elements of an offense are committed in one county and other elements in another. Tenn.R.Crim.P. 18(b). A single element may occur in more than one county.

Embezzlement is defined by statute as (1) a fraudulent (2) conversion to one's own use (3) by an officer, employee or clerk (4) of money or property (5) in his possession or care by virtue of his employment. T.C.A. § 39–4232.

The trial judge was correct in concluding that venue could have been laid in Blount County. By virtue of his employment, appellant received the proceeds of sales of products in that county. In addition, the conversion may have occurred in that county, since appellant sold the goods and allegedly falsified the receipts and converted the money. Also, the element of fraudulent intent may have been evidenced by appellant's actions in Blount County.

On the other hand, however, additional elements of the crime clearly occurred or continued to exist in Knox County. The conversion may just as reasonably be viewed as having occurred there, since appellant allegedly failed to account there for the funds which he had received. See *Hopper v. State*, 205 Tenn. 246, 326 S.W.2d 448 (1959) (county employee cashed embezzled checks outside the county and failed to account for them inside the forum county); *Lambeth v. State*, 3 Tenn.Cas. (3 Shannon) 754 (1877) (railway express company employee took custody of packages in Mississippi and failed to account for them upon arrival in Tennessee). Further, the employ-er's Knox County offices were the site of the employment relationship. The alleged element of fraudulent intent was also evidenced by appellant's actions in Knox County.

Since there was concurrent venue in Knox and Blount Counties, we agree with the Court of Criminal Appeals that the case was incorrectly dismissed.

With respect to appellant's objection to a retrial, it is clear that jeopardy attaches once a jury is impaneled and sworn in a court having jurisdiction. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).[1] The essence of the prohibition against double jeopardy is not that a defendant may incur a greater risk of being found guilty in a second trial than he had in the first, or that the second trial may be conducted prejudicially, but rather that he would risk conviction for an offense for which he has already been placed on trial and in jeopardy. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Price v. Georgia*, 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970).

The United States Supreme Court has explained the principle as follows:

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty." *Abney, supra*, at 661–62, 97 S.Ct. at 2041–42, quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 1979 (1957).

1. Of course, any ruling that in substance amounts to an acquittal triggers the protections against double jeopardy and bars retrial. See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1977); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Whitewell v. State*, 520 S.W.2d 338 (Tenn.1975). The Court of Criminal Appeals correctly held in this case that the dismissal for lack of venue was not a ruling on the sufficiency of the evidence or on the merits of the case and did not amount to an acquittal.

Since the jury had been impaneled and sworn and the first witness had testified, appellant clearly was placed in jeopardy in the present case.

■ Nevertheless, there are exceptions to the prohibition against double jeopardy. Retrial may be permitted if the termination of the proceedings was caused by error or misconduct of the defense counsel and there was no feasible alternative to halting the proceedings. For example, improper remarks by defense counsel that could taint the outcome of the case have been held to necessitate retrial. *See Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In the present case, the dismissal was not caused by misconduct on the part of appellant or of his attorney.

Retrial is also permissible, however, if the defendant through his counsel actively sought or consented to premature termination of the proceedings. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Seiber v. State*, 542 S.W.2d 381, 385 (Tenn.Crim.App.1976). In such a case the accused has deliberately elected to forego his right to have guilt or innocence determined by the first trier of fact. Thus, in *United States v. Scott, supra*, where counsel moved to dismiss two counts of an indictment on the ground that defendant was prejudiced by pre-indictment delay, and where the motion was granted at the end of trial, a subsequent trial for those charges was held not to be barred upon principles of double jeopardy.

■ The Court of Criminal Appeals held that the present case was governed by *United States v. Scott, supra*. After careful consideration, we are of the opinion that its decision was correct. Although defense counsel did not actually seek dismissal upon grounds of improper venue, he did in fact seek dismissal upon other grounds and, at a minimum, cannot be said to have objected to the erroneous action of the court in dismissing for lack of venue. Indeed, at one point, he concurred therein and urged that no elements of the crime had been shown to

have been committed in the county where the indictment was returned. Certainly counsel sought to have the prosecution dismissed on grounds not involving guilt or innocence. He actively sought such dismissal and in no sense did he seek to preserve appellant's right to have trial on the merits occur before the jury which had been impaneled to try the case.

The trial judge apparently interrupted the State's case in chief before the State had rested. He abruptly dismissed the prosecution without hearing all of the State's proof, upon grounds of improper venue. Although defense counsel apparently acquiesced in this action and at one point seemed to join in it, his primary insistence was that there was a fatal variance between the indictment and the proof—another ground which would not have involved guilt or innocence and which would not have prevented a retrial had it been granted. *See State v. Brooks*, 224 Tenn. 712, 462 S.W.2d 491 (1970), *appeal dismissed sub nom. Duncan v. Tennessee*, 405 U.S. 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972); *Wilson v. State*, 200 Tenn. 309, 292 S.W.2d 188 (1956). In the *Brooks* case, *supra*, the case had gone to trial, proof had been introduced and the trial judge had then dismissed the proceedings because he found a fatal variance between the indictment and the proof. Defendant was then retried and convicted. The Court of Criminal Appeals held that the second prosecution was barred on principles of double jeopardy. This Court reversed, and the United States Supreme Court, after granting certiorari, dismissed the appeal upon the ground that the case primarily involved "rules of criminal pleading peculiar to the State of Tennessee" rather than principles of double jeopardy.

In the present case the motion of counsel for the defendant was as improper as the action of the trial judge, inasmuch as the State had not closed its case. At that point the defendant sought dismissal of the indictment and of the trial in Knox County upon grounds which would not have prevented his retrial. We therefore are constrained to the view that he did indeed

"consent" to the dismissal and desire to obtain it, even though the trial judge acted upon a different ground. As previously stated, the record shows that counsel for appellant did not except or otherwise object to the venue ruling made by the trial judge.

Jeopardy had attached in this case and the accused had the right, if he had insisted upon it, to have the case proceed to a conclusion on the merits. When he joined in and actively sought dismissal, however, it does not seem to us that he is entitled to rely upon principles of double jeopardy. As stated by the United States Supreme Court in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), the concept of double jeopardy rests upon the principle that the state should not be allowed to make repeated efforts to convict an individual for an alleged offense. In the *Scott* case, the Court said:

"But that situation is obviously a far cry from the present case, where the Government was quite willing to continue with its production of evidence to show the defendant guilty before the jury first impaneled to try him, but the defendant elected to seek termination of the trial on grounds unrelated to guilt or innocence. This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt." 437 U.S. at 96, 98 S.Ct. at 2196.

The judgment of the Court of Criminal Appeals is affirmed. The cause is remanded for trial on its merits in Knox County, where it originated and where venue was properly laid.

Costs incident to the appeal are taxed to appellant, Knight. All other costs will abide the results in the trial court.

FONES, COOPER and DROWOTA, JJ., concur.

BROCK, J., dissents.

BROCK, Justice, dissenting.

I respectfully dissent.

Defendant was indicted in Knox County for embezzlement. At trial a jury was impaneled and sworn. The trial court heard the testimony of one prosecution witness, Mr. James Alexander, President of Kay's Ice Cream Company, the victim of the alleged embezzlement. Alexander testified that defendant Knight picked up ice cream products at the Kay's plant in Knoxville before servicing his route, which was in Blount County. The two supermarkets to whom Knight allegedly presented false tickets were in Blount County. The originals of the tickets were then turned in at the home office in Knoxville at the end of the day.

Mr. Alexander was cross-examined, then excused. At this point in the trial the judge asked the jury to step out of the courtroom and stated that he would like to "hear from the attorneys" on the question of venue. The prosecutor, Mr. Gill, then presented argument that venue in Knox County was proper. Defense attorney Bell spoke next, but side-stepped the venue issue, and urged a judgment of acquittal under Rule 29, Tenn.R.Crim.P., because of an alleged variance between the elements alleged in the indictment and shown by the State's proof.

The State argues that the following remarks of defendant's Attorney Bell were equivalent to a motion to dismiss:

"Now he cannot show that any of these elements happened in Knox County, Tennessee. We say the State hasn't got a case in Blount or Knox County as a result of this indictment . . . ."

Placed in the context of Mr. Bell's whole argument, however, which plainly centered on the supposed defects in the indictment and urged a termination of the case on

another ground entirely, this remark does not, in my opinion, amount to a motion to dismiss because of improper venue.

The court stated, after responding to Mr. Bell's Rule 29 motion:

"I don't believe that the State has proved venue in Knox County but it has proved venue in Blount County. Because of that, *without even a motion*, the Court would have to say that we are in the wrong county trying this." (Emphasis added.)

The court heard further argument from the State on the venue issue. Interspersed in the State's colloquy with the court were three renewals by the defense of its motion for judgment of acquittal. The judge finally declared that he was going to "sustain the motion," apparently referring to his own motion for dismissal rather than Mr. Bell's Rule 29 motion for acquittal. Mr. Bell then stated: "Your honor, we are insistent that the court enter a judgment of acquittal." The court replied:

"I am not going to enter a judgment of acquittal. I'm going to dismiss the case on the fact that the State is in the wrong [county]."[1]

Mr. Bell again argued for judgment of acquittal, but the trial judge, holding that the indictment alleged all of the elements of embezzlement by an employee under T.C.A., § 39–4232, repeated his intention to dismiss because of improper venue. Attorney Bell then said:

"The defendant excepts to the Court's ruling, not as to the venue question, but as to the indictment."

The defense did not at any time formally object to the dismissal of the indictment for improper venue.

Some narrow exceptions to the prohibition against double jeopardy are made when "there is a manifest necessity for the [dismissal], or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). The Supreme Court has cautioned that "The power ought to be used with the greatest caution, under urgent circumstances and for very plain and obvious cases." *Id.*

Retrial is permissible if the defendant has actively sought or consented to the premature termination of the proceedings.[2] *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Seiber v. State*, 542 S.W.2d 381, 385 (Tenn.Crim.App.1976), *cert. denied, id.* In *United States v. Scott, supra*, counsel moved to dismiss two counts of an indictment on the grounds that defendant was prejudiced by preindictment delay, and the motion was granted at the end of trial; a subsequent trial for those charges was not barred.[3] Similarly, in *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), where the prosecutor moved to consolidate indictments and the defendant successfully opposed the motion, trial under one indictment was permitted following trial and a finding of guilt under the other. In *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), after the prosecutor's opening statement in a bench trial the defendant moved for a dismissal of the indictment because it failed to allege the requisite specific intent. The judge responded that he needed to study the law. The trial proceeded, and at the close of the evidence the judge granted defendant's motion. Because counsel had requested the dismissal and had not object-

---

1. Double jeopardy principles governing mistrials apply to cases where an indictment is dismissed. A mid-trial dismissal was said to be "functionally indistinguishable from a declaration of a mistrial." *Lee v. United States*, 432 U.S. 23, 31, 97 S.Ct. 2141, 2146, 53 L.Ed.2d 80 (1977).

2. Even if at the time defense counsel purports to "consent" to termination of the proceedings, however, retrial will be barred if the cause of the ruling was conduct by the prosecutor or

judge that rises to the level of overreaching, harassment, or bad faith. *Lee v. United States*, 432 U.S. 23, 34, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971).

3. The jury found defendant not guilty of the third count in the indictment. 437 U.S. 84, 98 S.Ct. 2190.

ed to completing the trial, the court ruled that defendant had chosen not to exercise his protection against double jeopardy. *Id.* at 32–33, 97 S.Ct. at 2146–47.

But, the instant case does not fall into the category of those just discussed, because defense counsel neither sought nor consented to dismissal for lack of venue. The thrust of counsel's argument was that there was a fatal variance between the indictment and the proof respecting certain elements of the offense that justified an acquittal. The only evidence in the record that could arguably be construed as consent to the dismissal is counsel's statement at the conclusion of the following exchange:

"[Defense attorney]: If the court would point out the elements of embezzlement reflected in this indictment—that is the indictment of the State of Tennessee vs. Arlie Knight—

"The Court: I've already done that and I'm not going to rule on it. In fact, I'm going to deny your motion for judgment of acquittal and proceed on another theory that I have presented, that the indictment is good but the trouble is that the proof shows that the events occurred in Blount County . . . .

"[Defense attorney]: All right. Now can we do this, can we let the record reflect that a jury was sworn and that the—

"[Prosecutor]: The record already reflects that.

"The Court: It would already reflect that.

"[Defense attorney]: That traditionally, we—

"The Court: I'm going to call them in here and dismiss them and tell them why I'm dismissing them, too. All right, bring the jury back in.

"[Prosecutor]: Your Honor, the State excepts and prays for an appeal.

"[Defense attorney]: The defendant excepts to the Court's ruling, *not as to the venue question, but as to the indictment.*" [Emphasis added.]

The quoted discussion terminated a disagreement that was lengthy and fast-moving. Each party was insistent on his position: the prosecutor that venue was proper, the judge that venue was improper, and the defense that a variance required an order of acquittal. Counsel renewed, four times, his motion for judgment of acquittal, which was denied. Viewed in this context, I conclude that the statements made by defense counsel did not amount to consent to the dismissal for lack of venue.

Nor do I consider that defense counsel's failure to voice a formal objection to the court's dismissal amounted to consent, given the position expressed by counsel and the fast-moving context in which the entire colloquy took place. *See People v. Johnson,* 396 Mich. 424, 240 N.W.2d 729, *cert. denied,* 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976) (silence by defense counsel did not amount to consent by defendant); *State v. Sedillo,* 88 N.M. 240, 539 P.2d 630 (N.M.App. 1975) (counsel assumed objection would be useless under the circumstances); 1 Wharton's Crim. Law, § 62. In this respect the case is analogous to *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), a tax evasion case in which the judge, *sua sponte,* dismissed the proceedings mid-trial because he feared that several witnesses might be implicated in the case and might not have been adequately warned of their constitutional rights. In that case, too, the dialogue preceding the court's ruling was fast-paced and the counsel were interrupted several times by the judge. 400 U.S. at 487, 91 S.Ct. at 558. The Supreme Court stated in *Jorn,*

"[I]ndeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so." *Id.*

Despite the fact that, as in the instant case, no formal objection was made to the dismissal in the initial trial, the court ruled that a second trial was prohibited.[4] *Id.*

4. Justice Harlan wrote the opinion for a plurality of four. Two justices thought that the Court lacked jurisdiction because the trial judge's actions amounted to an acquittal, but joined the judgment of the Court to create a majority. 400 U.S. at 488, 91 S.Ct. at 558.

Moreover, in the case at bar defense counsel brought the double jeopardy issue to the court's attention in his statements concerning the jury, quoted above, and by the following statement,

"We say that the State hasn't got a case either in Blount County or Knox County as a result of this indictment because jeopardy has attached . . . ."

It is my opinion that counsel's failure to make a formal objection did not amount to consent to the dismissal.

I would hold that the double jeopardy clauses of the Tennessee and United States Constitutions preclude subjecting this defendant to a second trial, his first having been terminated without a verdict, through no fault of his own.

## ORDER ON PETITION FOR REHEARING

HARBISON, Chief Justice.

A petition for rehearing has been filed in the above case on behalf of appellant Arlie Knight. After consideration of same, the Court is of the opinion that the petition is not well taken and the same is accordingly denied at his cost.

Justice BROCK adheres to the views expressed in his original dissenting opinion filed in this cause.

FONES, COOPER and DROWOTA, JJ., concur.