IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION

FILED

April 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| LESLEY BUFORD, | * | C.C.A. # 03C01-9603-CR-00096 |
| | * | |
| Appellant, | * | HAMILTON COUNTY |
| VS. | * | |
| | * | Hon. Stephen M. Bevil, Judge |
| STATE OF TENNESSEE, | * | |
| | * | (Post-Conviction) |
| Appellee. | * | |
| | * | |

For Appellant:

Lesley Buford, Pro Se
South Central Correction Facility
P.O. Box 279
Clifton, TN 38425-0279

For Appellee:

Charles W. Burson
Attorney General & Reporter

Robin L. Harris
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

OPINION FILED: _____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The petitioner, Lesley Buford, appeals the trial court's dismissal of his petition for post-conviction relief. The single issue presented for our review is whether the trial court erred by dismissing the petition without any answer having been filed by the state, without the appointment of counsel, or without an evidentiary hearing.

Because the issues raised in the petition can be conclusively determined in favor of the state, we affirm the judgment of the trial court.

On April 8, 1994, the petitioner pled guilty to one count of disorderly conduct, a misdemeanor, and four counts of driving while a habitual motor offender order was in effect, Class E felonies as defined in Tenn. Code Ann. § 55-10-616. The trial court imposed a sentence of eleven months twenty-nine days for the disorderly conduct offense to be served concurrently with consecutive sentences of three years, two years, and two years for the first three habitual motor offender violations. A two-year sentence for the fourth violation is to be served concurrently. We calculate the effective sentence as seven years in the Tennessee Department of Correction. There was no direct appeal.

On December 28, 1995, the petitioner filed this, his first petition for post-conviction relief, alleging (1) that his guilty pleas had not been knowingly made because a seven-year rather than a six-year sentence had been imposed; (2) that his defense counsel was ineffective; and (3) that his conviction violated double jeopardy principles. The petitioner requested the appointment of counsel. The state filed no response.

Utilizing the Post-Conviction Procedure Act effective May 10, 1995, the trial court summarily dismissed the petition on the following grounds:

> (1) the court found that the petition presented no basis for relief;
>
> (2) the transcript of the plea hearing showed that the court informed the petitioner he would receive a seven-year sentence and this sentence was in accordance with the plea agreement;
>
> (3) by pleading guilty, the defendant waived his right to attack defects in his cases including his claims that the two felony driving offenses committed on the same day constituted only one offense and that he faced double jeopardy when tried on an indictment that the city court had already dismissed.

The post-conviction legislation of 1995 allows for a preliminary dismissal when, among other things, the petition does not include a possible ground for relief:

> Upon receipt of a petition in proper form, or upon receipt of an amended petition, the court shall examine the allegations of fact in the petition. If facts alleged, taken as true, fail to show that the petitioner is entitled to relief ... the petition shall be dismissed.

Tenn. Code Ann. § 40-30-206(f) (1996 Supp.) (emphasis added).

Case law before the 1995 Act provides some guidance. To make a claim "colorable" or actionable, the pro se petitioner must assert a basic theory of relief. Lowe v. State, 805 S.W.2d 368, 372 (Tenn. 1991). This court has defined a "colorable" claim, under the statutory law in existence before the 1995 Act, as "one that alleges facts showing that the conviction resulted from an abridgment of a constitutional right and which demonstrates that the ground for relief was not previously determined or waived." Hugh Ronald Carmley v. State, No. 03C01-9305-CR-00167, slip op. at 6 (Tenn. Crim. App., at Knoxville, Jan. 13, 1994). Much like the new statute, "the test [was] whether it appears beyond doubt that the [petitioner]

3

can prove no set of facts in support of his claim which would entitle him to relief." Swanson v. State, 749 S.W.2d 731, 734 (Tenn. 1988) (second alteration in original) (quoting Baxter v. Rose, 523 S.W.2d 930, 939 (Tenn. 1975)). See also Tenn. Sup. Ct. R. 28, § 2(H). "[A] petition stating a colorable claim for relief ... is to be considered on its merits." Swanson, 749 S.W.2d at 734.

The new statute requires the trial courts, at the preliminary stages, to first "determine whether the petitioner is indigent and in need of counsel." Tenn. Code Ann. § 40-30-206(e). The trial court "may provide counsel and allow time for an amendment to the petition." Id. Before there can be a preliminary dismissal, however, the statute requires the trial court to assume "as true" the facts alleged by the petitioner. Here, the petitioner, despite the contents of the transcript of his guilty pleas, first insisted that his seven-year sentence was contrary to the sentence promised in the plea agreement. He asserted that, because of a one year increase in sentence length during a bench conference to which he was not privy, his pleas were neither knowingly nor voluntarily entered; he contended that but for the deficient representation of his counsel, he would not have conceded his guilt to the charges that he had violated the habitual offender order and would have insisted on a trial.

Here, it is clear from the transcript of the sentencing hearing that the trial court carefully explained his sentence length to the petitioner. When asked if he understood, the petitioner responded, "Seven years, total of seven years." The trial judge again inquired, "Total of seven years. Three plus two, plus two?" The petitioner agreed to the sentence on the record. It can be conclusively determined from the record that the petitioner acknowledged his acceptance of a seven-year sentence. Because the complaint about the length of the sentence is the only basis

4

for the allegation that the plea was not voluntary, this court must conclude that the trial court correctly found that the plea was knowingly made.

Next, the petitioner claims that his trial counsel was ineffective for allowing him to plead guilty to two counts of habitual vehicle motor offender violation, because the offenses were committed on the same day and thus "constitute[d] one offense under Tennessee law." The petitioner goes on to claim that these two offenses were used to qualify him as a habitual vehicle motor offender. The record, however, establishes that the petitioner is not entitled to relief. While driving offenses committed on the same day are considered as a single offense when computing the number of convictions required to qualify as a habitual motor offender, Tenn. Code Ann. § 55-10-604, the same is not true for violations of an existing order. The record shows that the two violations at issue were for the abridgements of an order already in place, not the underlying offenses used to declare the petitioner a habitual offender. The petitioner has incorrectly interpreted the law; thus his counsel could not have been ineffective on this basis.

Lastly, the petitioner claims that his counsel was ineffective by failing to protect the petitioner's right against double jeopardy. The petitioner claims that one of the habitual motor offender violations had been dismissed in the Chattanooga City Court before being revived with the three others in the Criminal Court of Hamilton County.

In State v. Knight, 616 S.W.2d 593 (Tenn. 1981), our supreme court made the following comment about double jeopardy:

> The essence of the prohibition against double jeopardy is ... that[, in the second trial, the defendant] would risk conviction for an offense for which he has already been placed on trial and in jeopardy.

5

Id. at 595 (citations omitted). In Abney v. United States, 431 U.S. 651 (1977), the United States Supreme Court explained the reason for the protection:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal, and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Id. at 661-62. Once a criminal prosecution reaches the point where jeopardy attaches, the defendant may not be retried on the same offense; however, this point varies depending on what legal action is taken. Jeopardy does not attach at an arraignment or preliminary hearing. State v. Todd, 654 S.W.2d 379, 381 (Tenn. 1983); State v. Lee, 693 S.W.2d 361, 363 (Tenn. Crim. App. 1985). In a bench trial, jeopardy attaches when a defendant has been properly indicted; he has properly waived his right to a jury trial; the case is before a court with jurisdiction over the matter; the judge is qualified and present; the defendant has entered his plea; and the witness (one or all) has been sworn. State v. Daniels, 531 S.W.2d 795, 801-02 (Tenn. Crim. App. 1975). Testimony by a witness is not necessary. Id. at 802. In a jury trial, jeopardy attaches at a similar point: when the defendant is before a court with jurisdiction; there is a proper indictment; and the jury has been impaneled and sworn. Id. at 797. Once again, it is not necessary that there be any testimony. Id.

There are three notable exceptions to the prohibition against double jeopardy:

> (1) When the defendant actively seeks or consents to the premature termination of the proceedings (provided that he has not been caused to do so by the overreaching of the prosecution or judge);
>
> (2) When the proceedings were caused to terminate through the misconduct of defense counsel and there was no feasible alternative to halting the proceedings; and

6

> (3) Where there is a manifest necessity for the dismissal else "the ends of public justice would otherwise be defeated."

State v. Michael Wayne Downs and Stephen Anthony Downs, No. 88-275-III, slip op. at 7 (Tenn. Crim. App., at Nashville, Nov. 7 1989), app. granted and aff'd on unrelated issue, State v. Bryant, 805 S.W.2d 762 (Tenn. 1991) (citations omitted).

Here, however, the petitioner was never in jeopardy. The city court must have had jurisdiction over the criminal prosecution of "felonious operation of a motor vehicle" in order for the petitioner to show that jeopardy had attached. "[A] municipal or corporation court has no jurisdiction to hear cases based upon violation of State statutes unless the Legislature has expressly conferered such jurisdiction upon such court." Hill v. State ex rel. Phillips, 392 S.W.2d 950, 952 (Tenn. 1965). Tennessee Code Annotated section 6-21-501 defines the jurisdiction of municipal courts. While these courts have been granted jurisdiction over most misdemeanor crimes[1], they do not have authority to hear felony cases. The petitioner contends his charge in city court was a felony; in our view, the Chattanooga City court did not have jurisdiction to adjudicate the case. Thus, defense counsel could not have been ineffective by failing to raise the issue of double jeopardy.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:

---

[1]Tenn. Code Ann. § 6-21-501 grants city courts "concurrent jurisdiction and authority with courts of general sessions" in the same county. Tenn. Code Ann. §§ 16-15-401, -501, 40-1-109 defines the jurisdiction of general sessions courts which includes the authority to try misdemeanor cases.

_____
William M. Barker, Judge


_____
Curwood Witt, Judge